PILAR MUNOS v. THE STATE.

No. 347.   Decided January 26, 1910.

1.—Murder—Charge of Court—Harmless Error—Manslaughter.

Where upon trial for murder the charge of the court required the jury to believe both the use of insulting language by the deceased about defendant's mother, and further that such language should be accompanied by an assault with a knife, the same was error but harmless, as defendant received the minimum punishment for manslaughter.

**2.—Same—Charge of Court—Self-Defense—Deadly Weapon.**

Where upon trial for murder the character of the weapon used by the defendant was not very clearly shown by the evidence, or that it was a deadly weapon, the court properly charged that if the instrument used was not one which likely would have produced death it could not be presumed that death was designed, unless from the manner in which it was used such intention evidently appeared.

**3.—Same—Charge of Court—Self-Defense—Force Used.**

Where upon trial for murder the evidence showed that if defendant was assaulted at all the assault was very slight, and that the deceased was severely and mortally cut and stabbed, there was no error in the court's charge on self-defense that the defendant could not use more force than was reasonably indicated to be necessary.

**4.—Same—Charge of Court—Self-Defense—Relative Strength of Parties.**

On trial for murder where the evidence showed considerable familiarity between the parties, and that the deceased was drunk at the time of the homicide, there was no error in the court's charge in submitting the relative strength of the parties, and the defendant's knowledge of the character and disposition of the deceased, in his charge on self-defense.

**5.—Same—Sufficiency of the Evidence.**

On trial for murder where the defendant was convicted of manslaughter, which was sustained by the evidence, the verdict will not be disturbed on this ground.

Appeal from the District Court of Potter. Tried below before the Hon. J. N. Browning.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The testimony for the State showed that defendant went to the house reputed to be controlled by the deceased early in the evening, and there met deceased and other Mexicans, including two women; that the parties were all Mexicans and they entertained themselves with music for some time and were all drinking whisky; that defendant then left and returned to the house shortly before midnight in an intoxicated condition, carrying with him a bottle of whisky, of which he and the others drank; while defendant was away the principal State's witness and others went into another room and retired for the night; after defendant's return they heard him and deceased quarreling in another room; that they were drinking; that deceased telling defendant to leave the premises, and defendant saying he wanted to bring some whisky and sing; that the principal State's witness got up, and looking in the room occupied by the defendant and the deceased, the quarrel having seemingly stopped, he saw deceased leave the room, and defendant pouring some whisky on his shoulder where he (defendant) was cut; that the witness becoming frightened at the quarrel, left with another Mexican and two women going in the direction of another part of the Mexican settlement; that defendant overtook them, coming from the direction of the house which they had left, and having a knife handle in his hand, saying, "I am cut with a knife. I'll have my wish. I killed Jose (deceased);" that soon after midnight

the deceased was found dead, lying on his face in the kitchen; that he had a small pocket knife in his hand open; that a dirk blade about one inch wide and five or six inches long stuck through his left sleeve, and hung in the sleeve by the hilt; that this dirk had the handle pulled off and gone; that deceased had a number of cut wounds and stab wounds on his body, and a large wound in the abdomen where the intestines protruded, a stab in the back and a gash in the neck, and wounds on one hand; that at that time there was no one at the house; that search was made for the defendant and he was found next morning hiding in a pile of cross-ties some distance from the scene of the homicide, when he was arrested; that he had but a slight scratch cut on the shoulder, and one of his suspenders was cut nearly in two.

The defendant testified that he had acted in self-defense, and that he found the ‘dagger with which he killed deceased in the bed of deceased and pulled the handle off in the stabbing; that deceased had made threats to kill somebody in celebration of the New Year; that they were both drinking whisky freely; that deceased cursed and abused defendant, calling him a “d. s. o. b.;” that deceased cut him with a knife; that defendant grabbed up a quilt and held it up to keep deceased from cutting him, and that then the dagger fell out on the floor, and defendant grabbed the dagger and cut deceased, who was coming towards him with a knife. Defendant denied having made any statements as testified to by the State’s witnesses.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, and *Henry S. Bishop,·* District Attorney, for the State.—On question of court’s charge: Pannell v. State, 54 Texas Crim. Rep., 498, 113 S. W. Rep., 536; Hart v. State, 121 S. W. Rep., 507; Davis v. State, 121 S. W. Rep., 1108.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Potter County, on May 13, 1909, charged with the murder of one Jose Perris. On a trial therein had on June 2 of the same year he was found guilty of the offense of manslaughter, and his punishment assessed at confinement in the penitentiary for two years.

1. The court submitted the issues of murder in the first degree, murder in the second degree, manslaughter, and self-defense. Among other things, on the issue of manslaughter, the court thus instructed the jury: “Insulting words or gestures, or an assault and battery, so slight as to show no intention to inflict pain or injury, are not deemed adequate causes.

“The following are deemed adequate causes, to wit: the use of insulting language to defendant by the deceased, about the defendant’s mother, as testified by defendant and other witnesses, accompanied by an assault upon defendant with a knife, if done in such manner and

under such circumstances as to indicate no intention to kill or do serious bodily injury."

This charge of the court is complained of as being erroneous under the facts, and to cure the error therein appellant requested the following special instruction: "You are instructed at the request of the defendant that homicide may be reduced from murder to manslaughter upon any cause that produces a degree of passion in the mind of the slayer, that renders him incapable of cool reflection, and if you believe from the evidence that the deceased struck the defendant with a knife which produced bloodshed from the defendant, then the law declares the same to be adequate cause and a homicide committed under terror, rage and resentment of such injury, then you can not consider any higher degree of crime than manslaughter."

The charge of the court complained of is erroneous under the facts in that it requires the jury to believe both the use of insulting language by the deceased about defendant's mother, and further that such language should be accompanied by an assault with a knife. Since, however, appellant was convicted of manslaughter, and particularly in view of the facts that he was given the lowest penalty, an incorrect charge on this subject could not possibly have injured him. This view also disposes of many other criticisms of the court's charge on this subject.

2.   The court, on the law of self-defense, thus instructed the jury: "Every person is permitted by law to defend himself against an unlawful attack, reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary. Homicide is justified by law when committed in defense of one's person against any unlawful and violent attack, made in such a manner as to produce a reasonable expectation or fear of death or some serious bodily injury. A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such cases the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"If from the evidence you believe the defendant killed the said Jose Perris, but further believe that at the time of so doing the deceased had made an attack on him which, from the manner and character of it, and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed deceased, then you should acquit him; and if the deceased was armed at the time he was killed and was making such an attack on defendant, and if the weapon used by him and the manner of its

use were such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant."

In paragraph 15 of the court's charge, just preceding the charges above quoted, the jury are thus instructed: "The instrument or means by which a homicide is committed are to be taken into consideration in judging the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears."

This charge was objected to for the reason that appellant's intent was not a question to be determined on the trial, and that said charge is without evidence to support it, and that same was prejudicial for the reason that the court applied said charge to that portion of same on which appellant was convicted, to wit: manslaughter, and same was a limitation on his right of self-defense. We are not prepared to agree to this contention. The character of the weapon used by appellant was not very clearly shown in the evidence, nor does it appear that it was of necessity a deadly weapon, and in such state of case it was indispensable for the court to have given the charge complained of, and a failure to have given same would have been error. Such charge was helpful and beneficial to appellant, and he is without just cause of complaint that same was given.

3. Complaint is made to the following portion of the court's charge on the law of self-defense: "Every person is permitted by law to defend himself against any unlawful attack reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary." It is claimed this charge is erroneous for the reason that it had a tendency to impress the jury with the belief that the court thought that defendant had used more force than was necessary, and also indicated to the jury that he should have resorted to other means of defense than the means used. We think that this complaint is without just basis. The evidence showed if any assault was committed at all on appellant, that same was very slight, whereas the evidence showed that the body of deceased bore numerous wounds, and in view of the entire record justified the submission of this issue to the jury. The evidence showed that he had two stabs in front, one on the left side of the stomach from which his entrails were protruding, and the other higher up in the ribs and just under the nipples, and that his throat was cut from pretty near the ear to just past the middle of the throat, and that his fingers were cut twice. If any case required a charge such as this, it seems peculiarly applicable here.

4. Nor do we think, under the facts of the case, there was any error in giving the following portion of the charge on self-defense, which is made the basis of complaint: "If from the evidence you believe the defendant killed Jose Perris, but further believe at the time of so doing

the deceased had made an attack upon him, which from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such fear, he killed deceased, you should acquit him." In this case the evidence showed considerable familiarity between the parties; that deceased was at the time quite drunk, and, generally, such a state of affairs as made the giving of such charge appropriate, and same can in no sense be said to be harmful. We think in view of all the facts that the charge of the court on self-defense was sufficient. There are no bills of exception in the record, and the only matter complained of is the court's charge. We think, in view of all the facts, which we have carefully examined, that appellant's objections to the charge on self-defense, considered as a whole, are not substantial. That it was subject to some verbal criticisms may be conceded, but these were not of a serious character or such as, in our judgment, could possibly have influenced the result of the trial.

5. The evidence seems well to sustain the verdict, and on the entire record we think appellant is without just cause of complaint.

The judgment is affirmed.

*Affirmed.*