## D. E. SODERMAN v. THE STATE.

No. 7411.   Decided November 7, 1923.

Rehearing denied March 26, 1924.

1.—Manslaughter—Insanity—Husband and Wife—Cross-Examination.

The statute forbidding the wife to become a witness against her husband does not inhibit her cross-examination when she is introduced as a witness in his behalf on all matters germain and pertinent to her direct examination.   Following:   Creamer v. State, 34 Texas, 173, and other cases.

2.—Same—Bill of Exceptions—Evidence—Husband and Wife.

Where the bill of exceptions failed to show that the inquiry was foreign to the matter of the direct examination, and in the absence of such an averment, the presumption is in favor of the correctness of the court's ruling on the matter before it;   besides, the matter is clearly pertinent to the direct examination of the wife.

3.—Same—Evidence—Insanity.

Where the witness has testified to words and conduct of the defendant when he arrested him and gave the opinion that defendant was insane, there was no error in not permitting him to testify that he had filed a charge of lunacy against the appellant.

4.—Same—Evidence—Insanity—Declarations of Defendant.

Where, upon trial of murder, the witness while he did not give an opinion touching the insanity of the defendant, yet the declaration which he would have imputed to appellant apparently was offered as true that appellant's wife had confessed to him her illicit reations with the deceased, and there was, therefore, no error in excluding them as hearsay.

5.—Same—Bill of Exceptions—Question and Answer Form.

Where no reason is given nor discovered for not putting the bills of exception in narrative form they need not be considered;   besides they reveal no error.

6.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions refers to the testimony of the witness concerning the habits of the appellant with regard to the use of intoxicants, and bears on the issue presented by the direct testimony of appellant's wife, there is no error.

7.—Same—Evidence—Conversation.

The statute provides that when a part of an act, declaration, or conversation is given in evidence by one party, the whole on the same subject may be inquired into by the other.

**8.—Same—Charge of Court—Manslaughter.**

Where the grade of the homicide was reduced to manslaughter by the verdict, any defect in the charge which was not calculated to prejudice some other defensive issue would not be of consequence. Following: Munos v. State, 58 Texas Crim, Rep., 147, and other cases.

**9.—Same—Adequate Cause—Manslaughter.**

While information that deceased had had illicit relations with appellant's wife did not necessarily preclude a verdict higher than manslaughter, such information was adequate cause, but whether such passion was produced and controlled in the homicide were questions of fact for the jury. Following: Holman v. State, 92 Texas Crim. Rep., 364, and other cases.

**10.—Same—Insanity—Charge of Court—Temporary Insanity.**

Where, upon trial of murder, defendant pleaded insanity and there was testimony of temporary insanity produced by the immoderate use of intoxicants and the court gave a general charge on the issue of insanity in approved form and also charged upon temporary insanity produced by the immoderate use of intoxicants, there is no reversible error.

**11.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder in which the defendant pleaded insanity, there was also evidence supporting the State's theory that the testimony of illicit sexual acts of deceased and appellant's wife was fabricated, and there was sufficient evidence to support the conviction if defendant was sane, which was submitted to the jury there is no reversible error.

**12.—Same—Insanity—Preliminary Trial.**

Where, as in the instant case, present insanity is not intimated in advance by the attorneys conducting the trial, and is not apparent at the time to the court, the failure of the court to empanel a jury to determine that issue preliminary to the trial for the offense with which the accused is charged, cannot be successfully urged after verdict.

**13.—Same—Husband and Wife—Cross-Examination.**

This court is not in error in holding that the cross-examination of defendant's wife did not transcend legitimate bounds and are therefore confirmed in the views heretofore expressed.

**14.—Same—Bill of Exceptions—Question and Answer Form.**

Where the court did not direct that the evidence be presented in bills of exception which are in question and answer form, the same will not be considered on appeal. Following: Reese v. State, 94 Texas Crim. Rep., 320.

**15.—Same—Bill of Exceptions.**

No error is presented by appellant's fifteenth bill of exceptions which was not discussed in the original opinion.

**16.—Same—Charge of Court—Practice on Appeal—Insanity.**

The charges of the court given, requested, and refused upon the issue of insanity present no error and the motion for rehearing is overruled.

Appeal from the District Court of Dallas. Tried below before the Honorable C. A. Pippen.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*McLean, Scott & McLean, J. W. Kearby* and *W. W. Nelms,* for appellant.  On question of cross-examination of husband and wife: Brock v. State, 44 Texas Crim. Rep., 335; Johnson v. State, 148 id., 328.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, for the State.

MORROW, PRESIDING JUDGE.—The offense is manslaughter; punishment fixed at confinement in the penitentiary for a period of five years.

That the appellant, using a pistol, shot and killed the deceased Powers was proved without controversy.  Powers owned and operated the Waldorf Hotel, situated in the city of Dallas.  Appellant came into the lobby of the hotel and killed the deceased.

The theory of insanity was presented as a defense; and in mitigation it is claimed that the homicide was due to passion engendered by information that Powers had seduced the wife of the appellant.

Appellant introduced his wife as a witness.  On cross-examination, State's counsel propounded this question: "Did you or not know, Mrs. Soderman, that while in Casper, on a drunken spree, he (Mr. Soderman) had a difficulty with his brother-in-law?" to which she replied: "He was not on a drunken spree when he had any difficulty."  She also testified on cross-examination that *she had complained to her husband about his failure to take her out to places; that her husband replied that Powers could take her as he seemed to have time to go.*  The direct examination of Mrs. Soderman is recorded in about twenty pages of the record.  It embraces her relations with her husband during the entire period of their married life, covering some nine years.  She told of the business and social relations of herself, her husband, the deceased and his wife.

The statute (Art. 795, C. C. P.) forbidding the wife to become a witness against her husband does not inhibit her cross-examination when she is introduced as a witness in his behalf.  Her opportunity for observation and other questions tending to show the accuracy of her direct testimony may be inquired into and the usual test of cross-examination applied to matters germane and pertinent to her direct examination.  Creamer v. State, 34 Texas Reports, 173, and other cases listed in Branch's Ann. Texas P. C., Sec. 152.  The cross-examination may not be extended into new subjects.  Bluman v. State,

33. Texas Crim. Rep., 64, and other cases cited in Sec. 152, supra. See also Johnson v. State, No. 7756, not yet reported.

In describing the relations with her husband after she became enamored with Powers, she, on cross-examination, said: "I begun to complain that he did not pay me any attention, didn't take me any place, and he was drinking. He had never drank to excess before that time."

In view of her testimony in appellant's behalf, the inquiry made by the State did not transgress the rule stated.

The testimony which appellant elicited from his wife on direct examination led to the conclusion that prior to the time that she began her illicit relations with the deceased, he (appellant) had been sober, industrious and successful in business, and that afterwards their relations were strained; that they quarreled when together and that she complained to him about his lack of attention to her and about his drinking. During the cross-examination this question was asked: "Q. Didn't he, the defendant, tell you that Hilton and Powers had robbed him, isn't that true, Mrs. Soderman? A. He made remarks like that. Q. Didn't he tell you further that he did not propose to stand for it? A. No, he did not."

In qualifying the bill, the court said that there was no objection to the part of the question first quoted. It appears that there was a negative answer to the second and that objection to it was promptly sustained. To the first question objection was necessary. Ward v. State, 70 Texas Crim. Rep., 406; Willingham v. State, 94 Texas Crim. Rep., 596, 250 S. W. Rep., 530; Gross v. State, 61 Texas Crim. Rep., 182; Johnson v. State, No. 7556, not yet reported. To the second, the objection was sustained. It is not plain from our examination of the record that the inquiries were not within the scope of the original examination of the witness. She testified to conversations with the appellant touching Powers and concerning appellant's business affairs. Certainly, the bill of exceptions fails to show that the inquiry was foreign to the matter of the direct examination, and in the absence of such an averment in the bill, the presumption is in favor of the correctness of the court's ruling on the matter before it. Golden v. State, 66 Texas Crim. Rep., 262, 146 S. W. Rep., 946; Brown v. State, 65 Texas Crim. Rep., 121, 144 S. W. Rep., 265. The grounds of objection stated in the bill are not equivalent to an averment of fact approved by the court. Conger v. State, 63 Texas Crim. Rep., 312 and authorities there collated. Mrs. Soderman was further asked on cross-examination if it was not true tha she did not tell of the illicit relations with Powers until they had gone to El Paso and appellant had been drinking and that his conduct was such that she had gone to her mother in Chicago and came back and separated, and that he was living at one hotel and

she at another.  The court, in his qualification, states that there was no objection to the question but merely to the method of examination. The matter is clearly pertinent to the direct examination wherein she testified to the divorce and several separations from appellant and to the time and manner of imputing to him information of her relations with Powers.

The witness Wood, a police officer, testified that he arrested the appellant at a rooming house on April 7th; that appellant's wife was locked up in her room and that appellant was raving; that he had seriously assaulted his wife and injured her; *that he stated to the officer that his wife had confessed to him her infidelity and criminal intercourses with a man named Powers, and that this was the cause of his having assaulted her; that he was put in jail by another officer.*  Wood gave the opinion that the appellant was insane.  Complaint was made of the failure of the court to permit the witness to testify that he had filed a charge of lunacy against the appellant. Police officer York was with Wood.  He saw the appellant at the same time and heard some of his remarks.  By him, appellant offered to prove that he (appellant) had stated that his wife had been assaulted by him because she had confessed her infidelity.  This declaration was proved by Wood without objection as a part of the predicate for the witness' opinion that appellant was insane.  York did not give an opinion touching insanity, but the declaration which he would have imputed to appellant apparently was offered as proof that appellant's wife had confessed to him her illicit relations with the deceased.  She testified to such fact on the trial; so did the appellant.  Neither was impeached on the subject by proof of conflicting statements out of court, and under the record as made, we are aware of no rule of evidence which would sustain the admission of the declaration in evidence.  As proof of the confession of the wife, the declaration of appellant was obviously hearsay.  It was cumulative of the proof of the same fact by Wood, and upon an issue which was not controverted by any direct proof.  Moreover, for the purpose stated, it was relevant alone on the issue of manslaughter, upon which the jury found in favor of appellant.

Several bills of exception are in the form of questions and answers. No reason is given nor discovered for not putting them in narrative form.  They are not adequate to call any matter in review, but if considered, they reveal no error.  One relates to the rejection of the opinion of a witness on the issue of insanity, who detailed no conversation, remark, act or demeanor of the appellant qualifying him to give an opinion.  Williams v. State, 37 Texas Crim. Rep., 349; Plummer v. State, 86 Texas Crim. Rep., 487.  Another such bill refers to the testimony of Mrs. Hochter concerning the hibits of the appellant with regard to the use of intoxicants, and bears on the issue

presented by the direct testimony of appellant's wife.

Testimony on behalf of the appellant was introduced through his wife relating her version of a conversation and transaction occurring at the time when she was in a room of the hotel with the deceased. Her testimony put Mrs. Hochter present during a part of the transaction and rendered competent the testimony of Mrs. Hochter to relate her recollection of the interview. Our statute seems conclusive on the subject. It says: "When part of an act, declaration or conversation is given in evidence by one party, the whole on the same subject may be inquired into by the other." C. C. P., Art. 811; Vernon's Tex. Crim. Stat., Vol. 2, p. 759, and authorities collated.

There was addressed to the court's charge on manslaughter some objections, but not pointing out any faults that we have perceived. The grade of the homicide was reduced to manslaughter by the verdict, and thus any defects in the charge which were not calculated to prejudice some other defensive issue would not be of consequence. Munos v. State, 58 Texas Crim. Rep., 147; Neyland v. State, 79 Texas Crim. Rep., 652; Cooper v. State, 93 Texas Crim. Rep., 75.

This court is not able to concur in appellant's position that the information that deceased had had illicit relations with appellant's wife precluded any verdict higher than manslaughter. Such information coming to appellant was adequate cause for passion reducing the homicide to manslaughter, but whether such passion was produced and controlled in the homicide were questions of fact for the jury to solve. Penal Code, Art. 1132, subdivision 3; Pickens v. State, 31 Texas Crim. Rep., 554; Branch's Ann. Texas P. C., Sec. 2029; see also Holman v. State, 92 Texas Crim. Rep., 364.

The charge on the general issue of insanity followed approved forms such as suggested in Willson's Texas Crim. Forms, 4th Ed., p. 929. The same is true of the charge on temporary insanity produced by the immoderate use of intoxicants. The propriety of submitting the last-mentioned issue is challenged. There is in the statement of facts evidence of the immoderate use of intoxicating liquor up to a very short time antecedent to the time of the homicide and which cogently points to that as the cause of any mental infirmity affecting the appellant at the time he killed the deceased. Indeed, the evidence was such as rendered an instruction on that issue imperative. In Art. 41 of the Penal Code, (Vernon's Texts Crim. Stat., Vol. 1, p. 22) it is said:

"It shall be the duty of the several district and county judges of this state, in any criminal prosecution pending before them, where temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was brought about by the immoderate use of intoxicating liquors, to charge the jury in accordance with the provisions of this article."

The use of intoxicating liquors by the appellant to excess was shown without controversy. He had undergone treatment on several occasions as a result of it. He remarried his divorced wife at Hot Springs while he was suffering from the results of drinking. After he went with his wife to El Paso he drank to excess and underwent treatment in a sanitarium. While in El Paso, he and his wife separated twice and were living apart in separate hotels. When she told him of her infidelity, he assaulted her and was arrested. The officers who took him in charge were used by him as witnesses. They described his conduct and gave the opinion that he was insane. They testified that he had been drinking and stated symptoms from which they drew the conclusion that he was insane. They did not assume to state the cause. The circumstances were such as justified the inference by the jury that his conduct was a result of the use of intoxicants.

Appellant, on the trial, took note of the bearing on the issue of insanity of the evidence of the use of intoxicants by the appellant and invited the court to observe it in the charge by the presentation of a special charge which, after adverting to the evidence of the communication by his wife of her relations with the deceased, uses this language:

"   .   .   . that his mind was in a state of nervous disorder, *resulting from the use of intoxicating liquor, or from any other cause,* and that the disclosure made to him produced upon his mind a shock so great as to destroy his sanity, or if you have a reasonable doubt as to this, and that while in such condition he came to Dallas and shot and killed the deceased, then you are instructed that you will acquit the defendant."

The effect of this request was to tell the jury that they might acquit on account of temporary insanity resulting from the use of intoxicants. Its refusal was, in our opinion, not error, as such temporary insanity could only mitigate the offense. P. C., art. 41, sup. However, it was enough to justify the court in giving a proper charge on the subject, even if the evidence had been less cogent on the issue in question.

There is much evidence in the record suggesting motive for the homicide other than the claimed relations of deceased and appellant's wife. Much evidence of express ill-will and resentment against the deceased because of business relationship with the appellant is revealed, and there is evidence supporting the State's theory that the evidence of illicit sexual acts of deceased and appellant's wife was fabricated. A statement in detail of all the facts is deemed unnecessary. The sufficiency of the evidence to support the conviction is conclusive unless appellant was insane at the time of the homicide. That was a controverted question properly submitted to the jury.

During the trial one of the witnesses for the appellant expressed the opinion that the appellant was insane at the time. After verdict, for the first time, appellant, in his motion for a new trial, complains of the failure of the court to call another jury and have the issue of present insanity tried preliminary to submitting the issue of appellant's guilt to the jury. If demand for a separate trial upon the issue of present insanity had been made in a timely manner, doubtless the trial court would have accorded the privilege. The right of the trial court upon his own initiative, after the jury had been impaneled and charged with the deliverance of the appellant, to stop the trial and begin another would be open to serious question. The statutes does not say in terms that the issue of present insanity shall be first tried. This court has held, however, that where the demand is made before the trial begins it should be first tried for the obvious reason that one who is insane might not be in a position to properly conduct his trial upon the issue of guilt or innocence. Art. 39, P. C., Ramirez v. State, 241 S. W. Rep., 1021. Where, as in this case, present insanity is not intimated in advance by the attorneys conducting the trial, or is not at that time apparent to the court, the failure of the court to impanel a jury to determine that issue preliminary to the trial for the offense with which the accused was charged cannot be successfully urged after verdict.

The record revealing nothing which, in our judgment, authorizes its reversal, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 26, 1924.

HAWKINS, JUDGE.—Because of appellant's insistence that we were in error in holding that the cross-examination of his wife did not transcend legitimate bounds we have again carefully examined her evidence elicited by him on direct examination, and are confirmed in the views heretofore expressed. It is apparent that the wife was seeking to take the entire blame for appellant's attitude towards her, and to account for his excessive use of intoxicating liquor because of the estrangement which she asserts was brought about by deceased. It was pertinent therefore for the State to show by cross-examination that appellant was drinking to excess when they were in Casper, Wyoming, at a time long prior to an acquaintance with deceased, and that while on a drunken spree in Casper he had a difficulty which grew out of appellant's treatment of his wife. All of this is revealed form the evidence. We think the State did not violate the rules of law in its cross-examination.

Some of the matters complained of in appellant's motion were presented in bills of exception which are in questions and answers. The court did not direct that the evidence in such form be incorporated in the bills. We fail to observe the necessity therefor. Such bills do not conform to Article 846 C. C. P., which provides that:

"Such stenographer's report when carried into the statement of facts or bills of exception, shall be condensed so as *not* to contain the questions and answers, except where, in the opinion of the judge, such questions and answers may be necessary in order to elucidate the fact or question involved."

See also Reese v. State, 94 Texas Crim. Rep., 220, 249 S. W., 857, in which many authorities are collated condemning bills violating the provision quoted.

No error is presented by appellant's fifteenth bill of exception which we did not discuss in our original opinion.

In view of appellant's motion we have again considered the charges given, and the requested charges refused, upon the issue of insanity. We believe the instructions given are in accord with precedents and that no error was committed in refusing to give those requested.

The motion for rehearing is overruled.

*Overruled.*